# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Timothy M.,**
**Petitioner Below, Petitioner**

**FILED**

September 3, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

vs) **No. 12-1331** (Gilmer County 01-C-09)

**David Ballard, Warden, Mount Olive**
**Correctional Complex, Respondent Below,**
**Respondent**

## MEMORANDUM DECISION

Petitioner Timothy M.'s appeal, filed by counsel Steven B. Nanners, arises from the Circuit Court of Gilmer County, which denied petitioner post-conviction habeas corpus relief by order entered on January 18, 2005.[1] Respondent David Ballard, Warden, by counsel Laura Young, filed a response. On appeal, petitioner argues that he is entitled to habeas release due to the trial court's errors at his plea hearing.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

In 1998, petitioner pled guilty to various sexual offenses, for which he was sentenced to serve twenty to fifty-five years in prison. He thereafter filed for post-conviction habeas corpus relief, which the circuit court denied in 2005. In October of 2012, the circuit court granted petitioner additional time to appeal the habeas order. Subsequently, petitioner brought this appeal challenging the circuit court's order denying habeas corpus relief.

This Court reviews appeals of circuit court orders denying habeas corpus relief under the following standard:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of

---

[1]Because the underlying criminal matter involves sensitive facts in which the minor victim was related to petitioner, we have redacted petitioner's last name to protect the victim's identity. *See State v. Edward Charles L.,* 183 W.Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

1

law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex rel. Franklin v. McBride*, 226 W.Va. 375, 701 S.E.2d 97 (2009).

On appeal, petitioner re-asserts one of the same arguments he raised before the circuit court: The circuit court's decision should be reversed because the trial court did not comply with Rule 11(e)(2) of the West Virginia Rules of Criminal Procedure when it did not inform petitioner that he could not withdraw his guilty plea if the trial court did not follow the State's sentencing recommendations.[2] The State had recommended concurrent sentencing; however, the trial court ultimately sentenced petitioner to consecutive sentences. Petitioner argues that this omission was not harmless error because he believed that his sentence was to be consistent with the State's recommendations and that he functioned at a limited intellectual level. Accordingly, petitioner argues that the circuit court order should be reversed and that his sentence should be remanded for concurrent sentencing or, alternatively, he should be permitted to withdraw his plea.

Upon our review of the record and the briefs on appeal, we find no error or abuse of discretion by the circuit court. The sole issue petitioner raises on appeal was addressed and discussed by the circuit court in its order denying petitioner post-conviction habeas corpus relief. Further, petitioner has not provided any evidence that would indicate any confusion he may have had at the proceedings or any indication that he may have contemplated withdrawing his plea. The trial court clearly explained to petitioner that it was not bound by the State's recommendation and that it had the authority to impose consecutive sentencing. Petitioner expressed neither confusion nor a resistance to move forward with his plea, regardless of the possibility of receiving consecutive sentences. Given these circumstances, the trial court's omission of the Rule 11(e)(2) provision was harmless error. *See* Syl. Pt. 3, *State v. Valentine*, 208

---

[2] Rule 11(e)(2) of the West Virginia Rules of Criminal Procedure states as follows:

> *Notice of such agreement.* -- If a plea agreement has been reached by the parties, the court shall, on the record, require the disclosure of the agreement in open court or, on a showing of good cause, in camera, at the time the plea is offered. If the agreement is of the type specified in subdivision (e)(1)(A), (C), or (D), the court may accept or reject the agreement, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report. If the agreement is of the type specified in subdivision (e)(1)(B), the court shall advise the defendant that if the court does not accept the recommendation or request, the defendant nevertheless has no right to withdraw the plea.

We further observe that subsection (h) of this rule provides as follows: "**Harmless error.** Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded."

W.Va. 513, 541 S.E.2d 603 (2000) ("The omission of the statement required by Rule 11(e)(2) of the West Virginia Rules of Criminal Procedure must be deemed harmless error unless there is some realistic likelihood that the defendant labored under the misapprehension that his plea could be withdrawn.")

Having reviewed the circuit court's "Findings of Fact [and] Conclusions of Law and Final Order," entered on January 18, 2005, we hereby adopt and incorporate the circuit court's well-reasoned findings and conclusions as to the assignment of error raised in this appeal.[3] The Clerk is directed to attach a copy of the circuit court's opinion letter and order to this memorandum decision.[4]

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** September 3, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

---

[3]Specifically, the circuit court addresses petitioner's argument on pages eight through eleven of the attached circuit court order.

[4]Consistent with the first footnote of this Memorandum Decision, we have redacted the circuit court's order to protect the victim's identification, using only an initial for petitioner's last name and using only initials to reference any other family members.

IN THE CIRCUIT COURT OF GILMER COUNTY, WEST VIRGINIA

FILED
2005 JAN 18 AM 11: 23
LANE SMITH
CIRCUIT CLERK
GILMER COUNTY, WV

STATE OF WEST VIRGINIA, EX REL.
TIMOTHY M
     Petitioner,

vs.                                          01-C-09

MICHAEL COLEMAN, ACTING WARDEN
MOUNT OLIVE CORRECTIONAL CENTER,
SUCCESSORS AND ASSIGNS,
     Respondents.

## FINDINGS OF FACT
## CONCLUSIONS OF LAW
## AND FINAL ORDER

This matter come before this Court on the 1st day of October, 2004 for a hearing on the petitioner's writ of habeas corpus. The petitioner appeared in person and by counsel Steve Bagby, the State of West Virginia appeared by counsel, Gerald Hough. The Court read the pleadings in this matter, took evidence, heard the argument of counsel, took the matter under advisement and finds as follows:

## FINDINGS OF FACT

1. Timothy E. M. , the petitioner in this matter and the defendant in 98-F-9 filed a pro se petition for habeas corpus relief with the Court on the 1st day of May, 2001, the Court summarily dismissed that writ of habeas corpus, the petitioner appealed that decision. The West Virginia Supreme Court of Appeals entered an order filed with the Gilmer County Circuit Clerk

1

000049

on the 16th day of October, 2001 directing this Court to appoint counsel for the petitioner to aid him in the filing of a writ of habeas corpus and in the holding of an omnibus habeas corpus hearing. The Court appointed attorney Elizabeth G. Farber to represent the petitioner and set the matter for a hearing on the 10th day of December, 2001. Petitioner's counsel moved to continue that hearing, the Court granted that motion and a hearing was held the 14th day of December 2001. At that hearing the Court granted the petitioner's motion to amend the previously filed habeas corpus petition. The Court ordered on the 8th day of January, 2002, that the petitioner be evaluated by Ralph S. Smith, Jr. M.D. and Rosemary L. Smith, Psy. D. of the Charleston Psychiatric Group in order to render expert opinions as to the competency of the petitioner to stand trial and as to his criminal responsibility at the time of the alleged crime. On the 30th day of April 2002, the Court granted the petitioner's motion for a hearing and an independent evaluation, the petitioner was then further evaluated by Dr. John Justice of West Virginia Psychiatric Services. On the 14th day of February, 2003, counsel for the petitioner, Elizabeth G. Farber, filed a motion to be relieved as counsel which the Court granted on the 20th day of February 2003, and appointed attorney Steve Bagby to represent the petitioner in this matter.

2. The petitioner previously entered a plea of guilty on the 9th day of November, 1998, to the following: one count of sexual assault in the second degree; one count of incest, and one count of sexual abuse by a parent of custodian. Those counts being count one, three and five of an eight count indictment returned against Mr. M. on the 7th day of July, 1998. In return for the plea agreement the State of West Virginia moved to dismiss the other five charges returned in the indictment against Mr. M .

3. The State of West Virginia filed an abuse and neglect petition regarding the victim in

2

000050

this criminal matter, the twelve year old step-daughter of the petitioner, A. L. Y. This Court presided over those proceedings and is familiar with the underlying facts of this case. The criminal charges arose after it was discovered that A. L. Y. was pregnant and she made allegations that the petitioner had engaged in sexual intercourse with her, subsequently, DNA evidence was taken from the infant, the petitioner, and A.L.Y. and that DNA evidence indicated that the petitioner was the father of the infant born to A.L.Y.

4. The petitioner alleges in his habeas petition that the Court did not properly advise him that he would not have the right to withdraw his plea of guilty if the Court did not follow the sentencing recommendations of the Gilmer County Prosecutor in the plea agreement.

5. The petitioner alleges that he did not understand the plea arrangement he had entered into with the State of West Virginia, that he did not understand the proceedings during the plea hearing, that he was not properly advised by his counsel during the criminal proceeding, and that he believed the Court would sentence him to concurrent sentences on all three counts.

6. The petitioner suffers from mild mental retardation, however he has been evaluated by various mental health professionals and found to be competent and criminally responsible.

7. The petitioners counsel during the criminal proceeding, 98-F-9, Mr. Russell Stobbs, had Mr. M evaluated, prior to entering into the plea agreement, by Lou Craddock, M.S., a licensed psychologist, to ensure Mr. M was mentally competent to do so. Mr. Stobbs did not make that report part of the record in this matter, he testified that he had Mr. M evaluated to make sure he could enter into the plea arrangement and that if he felt the report was necessary for the Court's consideration he would have filed it and made it part of the record. Mr. Craddock's report has been made a part of the habeas corpus proceeding. Mr. Craddock indicates in his

3

000051

evaluation that further evaluation of the petitioner is needed to evaluate his abilities and personality structure although Mr. Craddock indicates that because of the petitioners upbringing an appeal may be appropriate because there are substantial mitigating circumstances in the petitioner's history and person. (Page 4, Sturdevant & Associates Psychological Services evaluation.)

8. Mr. Stobbs testified that he met with the petitioner approximately ten times. That he discussed all possibilities with the petitioner and informed the petitioner that the Court did not accept binding pleas. That he made recommendations to the petitioner but left the decision to enter a plea up to Mr. M . . . . Mr. Stobbs further testified that he was appointed to represent the petitioner in July of 1998 and that in August of 1998 the defendant informed him that he wanted to enter into a plea agreement to get the matter over with. Mr. Stobbs testified that he did not have any concerns on the day of the plea hearing about the petitioners ability to understand.

9. Transcripts of the plea hearing indicate that the petitioner was informed by the Court that the Court was not bound by the plea agreement several times, each time the petitioner indicated to the Court that he understood, (see transcript pages, 6, 8, and 32 plea hearing, November 9, 1998).

10. Transcripts of the plea hearing indicate that the petitioner was informed by the Court several times that the Court could sentence him to consecutive sentences, each time he responded that he understood, (see pages, 6, 8, 32, and 43).

11. On page 7-8 of the plea hearing transcript the Court informed the petitioner of the charges to which he was pleading guilty and further informed the petitioner of the sentence carried by each of the charges, and then informed the petitioner that under the maximum penalty

4

000052

the petitioner could be sentenced for a term of not less than 20, nor more than 55 years, if the Court ran those sentences consecutively. The petitioner again responded that understood the Court's explanation.

12. The Court informed the petitioner that he was pleading guilty to sexual offenses and that once released from custody he would be required to register as a sexual offender for the rest of his natural life (see pages 33-35 of transcript).

13. The Court also informed the petitioner that the Court could waive the pre-sentence investigation pursuant to Rule 32(b)(B) (see page 14 and 32 of transcript).

14. The Court did waive the pre-sentence investigation and made the appropriate factual findings on the record as to why the Court determined a pre-sentence investigation was not necessary in this case, (see page 47-49 of transcript).

15. The Court determined it was appropriate to proceed immediately to the sentencing phase and stated that if the petitioner through his counsel needed to postpone sentencing to prepare for a sentencing hearing the Court would afford him that opportunity. The petitioner and his counsel took a brief recess to discuss that matter and decided to proceed to sentencing at that time as there was no evidence to present at a sentencing hearing (see page 48-49 of transcript).

16. The Court asked Mr. M if he was content with the manner in which Mr. Stobbs had represented him (page 39-40 of plea transcript) and he indicated to the Court that he was satisfied with the manner in which he had been represented by his counsel.

17. The petitioner was further evaluated by Ralph S. Smith, Jr., M.D. and Rosemary L. Smith, Psy.D. of the Charleston Psychiatric Group, Inc. on the 5th day of February, 2002. That evaluation considered the report of Mr. Craddock and was performed at the petitioners request

5

000053

for a competency to stand trial evaluation pursuant to his filing of the habeas petition. That evaluation found that the petitioner was competent to stand trial, stating, "We base this on the fact that he has an adequate understanding of the charges against him and the possible penalty, the role and function of courtroom participants, and the capacity to assist his attorney in his own defense." (Page 10, Charleston Psychiatric Group evaluation.) That evaluation further finds the petitioner was criminally responsible for his actions, stating, "We base this on the fact that he had no mental disease or defect which would have prevented him from appreciating the wrongfulness of his conduct, nor which would have prevented him from conforming his conduct to the requirements of the law." (Page 10, Charleston Psychiatric Group evaluation.) The evaluators further state that the petitioner may have a pedophilic problem, but state that further specialized testing would be necessary to make that diagnosis. (Page 10, Charleston Psychiatric Group evaluation.)

18. On the 26th day of April, 2002, the petitioner requested an independent evaluation and the Court granted that motion. The petitioner was evaluated by John D. Justice, M.D. on the 13th day of June, 2003, that report was submitted and made a part of the record on the 1st day of December, 2003. Page one of the report notes that it was delayed in order to obtain and review additional records, particularly the records of the petitioner's incarceration. That evaluation finds the petitioner competent to stand trial and finds that the petitioner was not legally insane at the time of the alleged crime. Dr. Justice further states, "With regard to mitigation or diminished capacity, there is a concern that the alleged crime and behavior allegations are repetitive in nature. This would reflect more than an encounter of poor judgment instigated by a single episode of substance intoxication. Furthermore, the victim alleges that the defendant warned her of the

6

000054

repercussions if she told others of the sexual interaction. It is difficult, if the court feels those facts are accurate, to justify mitigating factors or diminished capacity regardless of substance abuse or events occurring during the first few years of the defendant's life. More so, Mr. M. appears to manifest chronic behavioral difficulties of an antisocial nature that are likely to be repetitive over time, and serve as a significant risk for problematic behavior in the future if he is in a less secure environment and/or allowed access to illicit substances." (Page 10, Psychiatric Services evaluation.) Finally that evaluation states, "Lastly, the review of the sources of information do not favor any factors relevant to a reduction in the severity of the defendant's charges and behaviors (due to mental illness) if he is found to be guilty for such." (Page 10-11, Psychiatric Services evaluation.)

## DISCUSSION

The petitioner raises several issues in his writ of habeas corpus. He alleges that he did not understand the underlying plea agreement and that he did not understand his actions in entering the plea before this Court on the 9th day of November, 1998. The petitioner further alleges that his attorney during the criminal proceedings did not explain the process to him thoroughly enough and alleges his attorney failed to explain the difference between binding and non-binding plea agreements. He states the he was unaware that the Court could sentence him to consecutive sentences, and that he believed he would receive concurrent sentences.

Although the petitioner alleges he is unable to understand the proceedings because of his mental incapacities, the petitioner has been evaluated by two separate and independent evaluators, both of which found him to be competent to stand trial and to be criminally responsible for his actions, therefore this Court finds that the petitioner was competent to enter into plea negotiations

7

000055

and to enter a plea of guilty to the criminal charges.

The petitioner's counsel during the criminal proceedings, Russell Stobbs, is a competent attorney in criminal matters and properly represented the defendant in this matter. The Court notes that the petitioner was asked repeatedly if he understood, or if he had any questions and that the petitioner repeatedly told the Court he understood. The Court finds that the petitioner sufficiently understood the proceedings and that his counsel properly explained the plea agreement to him.

The Court determined it was ready to proceed to sentencing. The petitioner was given an opportunity between the taking of the plea and sentencing to meet with his counsel to discuss whether or not he wished to present evidence at a sentencing hearing at a later date, or if he wished to proceed to sentencing in this matter. The petitioner returned and indicated to the Court that he would not present any evidence and he desired to go ahead with sentencing. Petitioner's counsel moved the Court for a pre-sentence investigation, which the Court waived pursuant to Rule 32(b)(B), finding that there was enough information in the record that the Court could meaningfully exercise its sentencing authority. The Court presided over the abuse and neglect proceeding that resulted from the criminal charges against the petitioner, was aware of the facts and evidence in that matter, specifically that the petitioners twelve year old step-daughter had given birth to an infant that DNA evidence proved to be the petitioner's child, and the Court was familiar with the petitioners criminal record, that he was on probation for another offense at the time of this crime.

The petitioner further alleges as grounds for his writ of habeas corpus that the Court, in the plea hearing, did not inform him that he could not withdraw is plea of guilty if the Court did

.8

000056

not follow the sentencing recommendations in the plea agreement, as required by Rule 11(e)(2) of the Rules of Criminal Procedure. According to the plea agreement the Prosecuting Attorney of Gilmer County had agreed to recommend concurrent sentencing in this matter. The petitioner alleges that he believed he was guaranteed such sentencing and that he did not understand he had been sentenced consecutively until he began serving the sentence and requested potential release dates from the Department of Corrections.

The Court did not specifically inform the petitioner that he would not have the right to withdraw his guilty plea at a later time, however, the Court on numerous occasions informed the petitioner of the ramifications of entering a plea of guilty. The Court also informed the petitioner that the Court was not bound by the plea agreement in terms of disposition, that the sentences could be run consecutively and that the Court could waive a pre-sentence investigation. In response to the Court's question, "Do you understand that?" the petitioner responded, "Yes." The Court further went to great lengths to be sure the petitioner knew he was entering a guilty plea to sexual offenses and that such a plea would require him to register as a sexual offender once he is released from custody for the rest of his natural life.

Although the Court is required pursuant to Rule 11(e)(2), to inform the defendant entering a plea that he/she does not have the right to withdraw that plea if the Court does not follow the recommended sentence made in connection with the plea agreement, that omission can be found to be harmless error. **State v. Valentine, 541 S.E.2d at 603 (W.Va. 2000).** Therefore, Court finds that not specifically informing the petitioner that he did not have the right to later withdraw his guilty plea is harmless error. In **Valentine**, the West Virginia Supreme Court of Appeals writes, "The harmless error rule of Rule 11(h) of the West Virginia Rules of Criminal Procedure

9

000057

should be applied when the factual evidence is clear that no substantial rights of the defendant were disregarded." **Id.** at 606. It is clear from the record that the defendant understood that he was entering a guilty plea and he was informed by the Court that the plea agreement was not binding on the Court and that the Court could sentence him to consecutive sentences in this matter.

Further in **Valentine**, the West Virginia Supreme Court of Appeals writes, "Generally, these courts have held that the omission of the statement required by Rule 11(e)(2) must be deemed harmless error unless there is some realistic likelihood that the defendant labored under the misapprehension that his plea could be withdrawn." The Court informed the petitioner that he could be sentenced to consecutive terms and that the Court did not have to follow the recommendations of the prosecuting attorney. The petitioner repeatedly told the Court during the plea hearing that he understood what he was doing, the petitioner's counsel during the criminal proceedings, Russell Stobbs, testified in the habeas corpus proceeding that he met with the petitioner and explained to the petitioner the difference between binding and non-binding plea agreements and that this Court did not accept binding pleas. Mr. Stobbs further testified that he did have some concerns about his clients ability to understand and that had him evaluated by Mr. Craddock to be sure his client was capable of entering into a plea agreement. After consulting with Mr. Craddock, Mr. Stobbs felt his client was capable of understanding the plea agreement and that such plea agreement was in his clients best interest.

Mr. M has been evaluated by two other experts, both of whom submitted substantial reports to the Court, and both evaluators agree that the petitioner was competent to stand trial and was criminally responsible for his actions at the time of the crime. The Court finds that there

10

000058

is no likelihood that the petitioner labored under any realistic misapprehension that his plea could be withdrawn. The petitioner was informed by the Court that the Court was not bound by the plea agreement, that the Court could sentence him to consecutive sentence, that the Court could waive a pre-sentence investigation, and he was informed that he would be found guilty of sexual offenses that would require him to register as a sexual offender for the rest of his natural life.

## CONCLUSION

It is therefore **ADJUDGED and ORDERED** that the plea entered into by the petitioner, the defendant in 98-F-9, is a valid plea and that the petitioner is not entitled to a new trial in this matter and further that the petitioner is not entitled to any reduction of his sentence, is not owed any correction of his sentence, or entitled to a new sentencing hearing. It is **ADJUDGED and ORDERED** that the relief prayed for in the habeas corpus petition is denied. It is further **ADJUDGED and ORDERED** that the sentence heretofore imposed upon the petitioner is a just and proper sentence and he is to remain in the custody of the West Virginia Department of Corrections until such sentence is served. It is further **ADJUDGED and ORDERED** that this matter is dismissed and is stricken from the active docket of this Court.

The petitioner's objections and exceptions are noted.

The Clerk of this Court shall send certified copies of this Order to counsel of record.

Enter this 13th day of January, 2005.

_____
JACK ALSOP, JUDGE

11

000059